1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

# DISTRICT OF NEVADA

9

10  JAMES S. TATE, JR., M.D.,

11          Plaintiff,                              Case No. 2:09-cv-1748-LDG (RJJ)

12  v.                                              **ORDER**

13  UNIVERSITY MEDICAL CENTER OF
    SOUTHERN NEVADA, *et al.*,

14
            Defendants.
15

16

17          The plaintiff, James S. Tate, Jr., M.D., brought this action, alleging numerous

18  causes of actions, against defendants University Medical Center of Southern Nevada

19  ("UMC"), Steve Sisolak, Tom Collins, Larry Brown, Lawrence Weekly, Chris Giunchigliani,

20  Susan Brager, and Rory Reid, in their official capacity as the Board of Trustees of UMC

21  ("Trustees"), The Medical and Dental Staff of UMC ("Medical Staff"), Kathleen Silver, and

22  John Ellerton, M.D.[1]  The defendants move to dismiss the complaint (#11).  Tate has

23  opposed the motion (#18), and defendants have replied (#21).  Accordingly, the motion is

24  ripe for consideration.  The Court will grant the motion, but without prejudice, as to Tate's

25

26          [1]      Tate also alleged four claims against Peter Mansky, M.D.  In a separate
    order, the Court granted summary judgment in favor of Mansky on each of Tate's claims.

1   Claims 2-21, 23, and 24. The Court will further dismiss, with prejudice, Tate's prayer for

2   punitive damages on his state law claims.

3       Motion to Dismiss

4       The defendant's motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6),

5   challenges whether the plaintiff's complaint states "a claim upon which relief can be

6   granted." In ruling upon this motion, the court is governed by the relaxed requirement of

7   Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim

8   showing that the pleader is entitled to relief." As summarized by the Supreme Court, a

9   plaintiff must allege sufficient factual matter, accepted as true, "to state a claim to relief that

10  is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955,

11  1974 (U.S. 2007). Nevertheless, while a complaint "does not need detailed factual

12  allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

13  requires more than labels and conclusions, and a formulaic recitation of the elements of a

14  cause of action will not do." *Id.*, at 555 (citations omitted). In deciding whether the factual

15  allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6)

16  does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual

17  allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Further, the court "construe[s]

18  the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group,*

19  *Inc. v. City of Beaumont*, 506 F3.d 895, 900 (9th Cir. 2007).

20      However, bare, conclusory allegations, including legal allegations couched as

21  factual, are not entitled to be assumed to be true. *Twombly*, 550 U.S. at 555. "[T]he tenet

22  that a court must accept as true all of the allegations contained in a complaint is

23  inapplicable to legal conclusions." *Ashcroft v. Iqbal* 556 U.S. ___, 129 S.Ct. 1937, 1949

24  (2009). "While legal conclusions can provide the framework of a complaint, they must be

25  supported by factual allegations." *Id.*, at 1950. Thus, this court considers the conclusory

26  statements in a complaint pursuant to their factual context.

1    To be plausible on its face, a claim must be more than merely possible or

2    conceivable.  "[W]here the well-pleaded facts do not permit the court to infer more than the

3    mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the

4    pleader is entitled to relief."  *Id.*, (citing Fed. R. Civ. Proc. 8(a)(2)).  Rather, the factual

5    allegations must push the claim "across the line from conceivable to plausible."  *Twombly.*

6    550 U.S. at 570.  Thus, allegations that are consistent with a claim, but that are more likely

7    explained by lawful behavior, do not plausibly establish a claim.  *Id.*, at 567.

8        Factual Background

9    Briefly summarized,[2] Tate was first credentialed for clinical privileges at UMC in

10   1990.  The term of his first appointment was for two years.  Until 2008, he was re-

11   credentialed for terms of two years.  On October 28, 2008, the Medical Executive

12   Committee (MEC) of the Medical Staff voted to re-credential Tate for a term of three

13   months.  On November 18, 2008, the Trustees approved the re-credentialing of Tate for a

14   three-month term.  By letter of that same date, the MEC notified Tate that he was re-

15   credentialed for a three-month term and that during the three-month term, he was required

16   to obtain and provide the Medical Staff with (a) a full mental and physical evaluation, (b) an

17   evaluation for drug and alcohol dependence, and (c) enrollment in an anger management

18   program.  Tate alleges that he was provided neither notice nor an opportunity to be heard

19   on issues related to his privileges prior to October 28, 2008.

20

21       [2]      Rule 8(a)(2) requires "a short and plain statement of the claim."  Rule 8(d)
     requires that "[e]ach allegation must be simple, concise, and direct."  A substantial portion
22   of Tate's 48-page complaint violates one or both of these rules.
         Of particular concern to the Court is Tate's inappropriate allegation of legal
23   conclusions.  Whether a claim is sufficiently pled is determined by a complaint's factual
     allegations, not its legal conclusions.  While the use of legal conclusions to create "the
24   framework of a complaint" is appropriate, *Iqbal*, at 1950, the assertion of legal conclusions
     beyond those necessary to create such a framework violates Rule 8(a)(2).
25       As one example (among several) of this defect in pleading, Tate alleges a
     permissible framework for his §1983 claims in ¶¶105 and 129.  Paragraphs 106-128, and
26   ¶130 go far beyond laying out a framework for the requisite factual allegations necessary to
     show that he is entitled to relief.

3

During December 2008, and January 2009, Tate engaged in activities in response to the conditions placed upon his re-credentialing.  On December 16, 2008, Tate sent Ellerton a letter objecting to the re-credentialing action.  In his letter, Tate asserted his belief that the re-credentialing to a three-month term was an adverse action as a limitation of his clinical privileges.  Tate requested a fair hearing.  Tate did not receive a response.

Tate alleges his belief that, prior to January 27, 2009, he had satisfactorily complied with the three conditions placed upon his re-credentialing.  On January 27, 2009, the MEC again voted to re-credential Tate for a term of three months.  On February 17, 2009, the Trustees again approved the re-credentialing of Tate for a three-month term.  Tate alleges that he was provided neither notice nor an opportunity to be heard on issues related to his privileges prior to January 27, 2009.

On April 28, 2009, the MEC again voted to re-credential Tate for a term of three months.  On May 19, 2009, the Trustees again approved the re-credentialing of Tate for a three-month term.  By letter of that same date, the MEC again notified Tate that he was re-credentialed for a three-month term with the same three conditions.

Tate received a letter dated August 31, 2009, "stating that because [Tate] failed to meet the conditions of re-appointment, his clinical privileges were being terminated." Tate's clinical privileges have been terminated.

Analysis - Lack of Fair Notice

Tate's breach of contract claims are inadequately pled because his broad and vague allegations as to all defendants fails to provide fair notice to each defendant of the claim for relief pled against  the defendant.  Further, although the defendants raised this argument in the context of Tate's breach of contract claims, they have raised the related argument that Tate's failure to allege any individual act by Silver or Ellerton requires that the §1983 must be dismissed as to them.  Having reviewed the entirety of Tate's complaint, the court finds the argument applicable to each of Tate's claims against the defendants.

4

1    Context matters in notice pleading: fair notice under Rule 8(a)(2) depends on the

2    type of case.  In each of the claims challenged by defendants' motion to dismiss, Tate has

3    named as defendants three distinct entities: UMC, a county hospital in Nevada; the Clark

4    County Commissioners, in their official capacities as the Board of Trustees of UMC; and

5    the Medical and Dental Staff, a professional collegial body created by UMC's Bylaws

6    through which physicians obtain privileges at UMC.  In addition, in each of the claims

7    challenged by defendants, Tate has named two individual defendants–Ellerton, the Chief of

8    Staff of the Medical Staff, and Silver, the CEO of UMC.  "[I]t is particularly important in such

9    circumstances that the complaint make clear exactly who is alleged to have done what to

10   whom, to provide each individual with fair notice as to the basis of the claims against him or

11   her[.]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

12   As one example, the Court has considered the allegations of Tate's claims as

13   applied to Silver.  Tate generally alleges in ¶152 and elsewhere that, "[a]cting under the

14   color of law, Defendants denied Plaintiff's due process rights . . . by failing to provide

15   Plaintiff adequate notice and opportunity to be heard before they limited and conditioned

16   his clinical privileges at the MEC meeting on or about October 28, 2008."  There is no

17   respondeat superior liability under 42 U.S.C. § 1983.  *Jones v. Williams*, 297 F.3d 930, 934

18   (9th Cir. 2002).  To be liable, the defendant must have personally participated in the alleged

19   rights deprivation.  *Id.*  Though Silver is one of the defendants named in Tate's §1983

20   claims, a thorough review of his complaint and opposition fails to offer either allegation or

21   argument that she personally participated in any deprivation of his asserted procedural due

22   process right to notice and an opportunity to be heard.[3]  Similarly, in considering ¶152 as

23

24   _____

     [3]    A similar analysis can be applied to the three entity defendants.  To show
     liability with respect to an entity, a plaintiff must show some custom or policy of the entity

25   was the driving force behind the violation or the person causing the violation had final
     policymaking authority.  *Botello v. Gammick*, 413 F.3d 971, 978-79 (9th Cir. 2005).  The

26   complaint lacks any allegation that the failure to provide notice and a hearing was the result
     of a custom or policy or that the unidentified person or entity causing the violation had final

1  applied to UMC, the Court notes that the complaint lacks any allegation that the failure to

2  provide notice and a hearing was the result of a custom or policy of UMC or that the

3  unidentified person causing the violation had final policymaking authority for UMC.

4       Similarly, while Tate generally and vaguely alleges that "Defendants" had a

5  contractual relationship with him, he fails to identify any allegation in his complaint (or offer

6  a meritorious argument in opposition to the motion to dismiss) permitting a plausible

7  inference that he entered into a contract with Silver.

8       Rule 8(d)(1) requires that each allegation must be simple, concise and direct.  While

9  Rule 8(d)(1) also provides that no technical form is required, general allegations asserted

10  against all defendants regarding conduct or obligations that, as revealed by the context of

11  the complaint, are not attributable to all defendants are not direct allegations.  Tate's

12  allegations in Claims 11-13 provide an obvious example of this error.  Tate asserts claims

13  for breach of contract against the Trustees in these three claims.  In each of these three

14  claims, he generally alleges that Bylaws Articles III.A.3.a and .b impose contractual

15  obligations on all defendants.  A cursory review of these provisions in the Bylaws, however,

16  establishes that Article III.A governs the general qualifications of "[e]very Physician, Dentist

17  or Podiatrist who seeks or enjoys staff membership[.]"  Tate has neither alleged nor argued

18  that the Trustees are physicians, dentists, or podiatrists.  Accordingly, the context makes

19  plain that Bylaws Articles III.A.3.a and .b do not impose contractual obligations on the

20  Trustee defendants, much less on <u>all</u> defendants as alleged by Tate.

21       Similarly, Tate alleges in these claims that Fair Hearing Plan Article IV establishes

22  the contractual obligation of all defendants to provide a physician with specific procedural

23  requirements.  Article IV of the Fair Hearing Plan governs the "Hearing Procedure."  The

24  hearing, however, is conducted by an ad-hoc hearing committee composed of five

25  _____

26  policymaking authority.

6

1   members of the active Medical Staff as established in Fair Hearing Plan Article III.B.  Tate

2   has neither alleged nor argued that the Trustees are members of the active Medical Staff.

3   Again, the context makes plain that Fair Hearing Plan IV does not impose contractual

4   obligations on the Trustee defendants, much less on all defendants as alleged by Tate.

5       As Tate relies upon these same allegations of contractual obligations in Claims 8-

6   10, in which he alleges breach of contract as to all defendants (including the Trustees),

7   these three claims are also defectively alleged as to the Trustees and as to Silver.  As

8   Tate's claims for breach of implied covenant of good faith and fair dealing against the

9   Trustees (Claims 14-19) and against Silver (Claims 14-16) rest upon his allegations that

10  the defendants deliberately breached the obligations identified in the breach of contract

11  claims, these claims are defectively alleged as to the Trustees and Silver.  Further, Tate's

12  24th Claim, for negligence against all defendants, also rest upon these same obligations,

13  though Tate frames the obligations as arising from a duty of care rather than a contractual

14  duty.  Thus, Tate's 24th Claim for relief is defectively pled.

15      As a result of Tate's extensive reliance upon allegations against all defendants

16  generally, when the context indicates that the alleged conduct or obligations cannot be

17  common to all defendants, the Court will dismiss the complaint without prejudice.

18      <u>Analysis - 42 U.S.C. §1983 Claims</u>

19      Count Two alleges that <u>all</u> defendants violated his due process rights by failing to

20  provide him with adequate notice and opportunity to be heard prior to the MEC's October

21  28, 2008, vote to re-credential him for a three-month term with conditions.  Counts Three

22  through Seven allege a similar violation arising from the MEC's January 27, 2009, and April

23  28, 2009, votes, and the Trustees' approvals on November 19, 2008, February 17, 2009,

24  and May 19, 2009.

25      The threshold question for Tate's §1983 claims, as alleged in Counts Two, Three,

26  and Four, is whether a physician has a due process right to notice and hearing prior to the

MEC's recommendation to re-appoint a physician to a shortened re-credentialing period and its imposition of conditions for additional re-credentialing of clinical staff privileges. Procedural due process protections attach to constitutionally protected property interests. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  Such a property interest can be created and defined by "rules or mutually explicit understandings that support [an individual's] claim of entitlement to [a] benefit."  *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).  "The right to enjoy medical staff privileges in a community hospital is not an absolute right, but rather is subject to the reasonable rules and regulations of the hospital." *Moore v. Bd. of Trustees of Carson-Taho Hosp*., 88 Nev. 207, 212 (1972).  The Court can look to the Medical Staff's Bylaws and other documents implementing those Bylaws.

Tate fails to allege a protected property interest in either a re-appointment for a specific period of time or free of conditions.  While Tate asserts, in his opposition, that he alleges he was re-appointed to a three-month term (which he alleges is a shortened term) and that conditions were imposed, he does not point to any allegation in his complaint that he had an interest in re-appointment for a specific period of time or free of conditions. Rather, his opposition rests upon the text of the Bylaws and Credentialing Manual.

Relying upon Credentialing Manual Article III.G, the defendants assert that the MEC can recommend, and the Trustees can approve, terms of reappointment of up to two years. The first sentence of Credentialing Manual Article III.G provides: "Initial and reappointment periods of professional activity at U.M.C. are for terms not to exceed two years."  The defendants further argue that "[n]owhere do the Bylaws and Credentialing Manual provide plaintiff with any *entitlement* to reappointment for a two-year term."  Defendants' Motion, at 7 (emphasis original).

Tate responds that a reappointment is for a period of two years "except that the Medical Executive Committee may set a more frequent appraisal period for the exercise of particular privileges in general or by staff members who have identified health disabilities."

8

1  Bylaws Article III.G.[4]  He further argues that neither exception to the two-year term of

2  appointment (the exercise of particular privileges in general or pertaining to a staff member

3  with an identified health disability) is applicable.

4       Without specifically addressing Tate's arguments, the defendants reply that neither

5  the Bylaws nor the Credentialing Manual "contains a provision specifying that

6  reappointment terms *must* be for two years."  Defendants' Motion, at 4 (emphasis original).

7  The Court disagrees that Tate cannot allege sufficient facts that he is entitled to be re-

8  appointed to a term of two years.  The language of Bylaws Article III.G expressly provides

9  that "[a]ppointments to the Medical and Dental Staff are for a period of two (2) years."  The

10  provision then identifies two exceptions when a shorter appointment is permissible.  The

11  language stating that appointments <u>are for</u> a period of two years (except under two

12  specified circumstances) is a provision that specifies a reappointment must be for a period

13  of two years (except under the two specified circumstances).

14       The defendants argue that the language of Credentialing Manual Article III.G–that

15  re-appointments "are for terms not to exceed two years"–"quite clearly provides that terms

16  of less than two years are within the Committee's discretion."  Defendants' Reply, at 4.

17  They further assert that this language is nonsensical if, as Tate argues, appointment for a

18  term of two years is mandated.  The Court again disagrees.  The language of Bylaws

19  Article III.G (and Tate's argument) expressly recognizes two exceptions in which a term of

20  appointment may be for less than two years.  Any discretion of the MEC, pursuant to

21  Credentialing Manual Article III.G, to recommend appointments of less than two years must

22  be exercised consistent with the requirement of Bylaws Article III.G that appointments are

23  for two years except under the circumstances identified in Bylaws Article III.G.

24

25  _____

26       [4]    The Court presumes Tate is relying upon Bylaws Article III.G, as that is the
provision setting forth the language quoted by Tate.

9

1    Nevertheless, Tate's argument that the defendants have not identified a health

2  disability permitting appointment to a term of less than two years misplaces his burden.

3  The defendants' motion challenges whether Tate has alleged sufficient facts to state a

4  claim for relief.  The initial burden rests upon him to show that he alleged facts, in his

5  complaint, showing that he is entitled to relief.  The defendants need not show that either

6  exception to Bylaws Article III.G applies.  Rather, the burden rests upon Tate to allege facts

7  showing that neither exception to Bylaws Article III.G is applicable.  As Tate has not

8  identified any such allegation within his complaint, dismissal of his §1983 claims without

9  prejudice is also appropriate for this reason.

10    The defendants further argue that, under the circumstances alleged by Tate, he has

11  not alleged the right to any notice or hearing, and that they provided him with the requisite

12  due process.  Pursuant to Credentialing Manual Article II.M.2, however, "[a]n adverse

13  recommendation by the Medical Executive Committee is defined as a recommendation

14  to . . . limit requested clinical privileges."  As an appointment is for a term of two years

15  (except under the circumstances identified in Bylaws Article III.G), an appointment for less

16  than two years (except under the circumstances identified in Bylaws Article III.G) is a limit

17  of the clinical privileges to which a physician is otherwise entitled, and is thus an adverse

18  recommendation.  As such, pursuant to Credentialing Manual Article II.M.1, upon the

19  MEC's recommendation of a three-month term, the Chief of Staff had a duty to immediately

20  inform Tate by special notice and Tate was "then entitled to the procedural rights provided

21  in the Fair Hearing Plan."

22    <u>Individually-Named Defendants</u>

23    To state a claim under §1983, a plaintiff must allege two essential elements: "(1)

24  that a person acting under color of state law (2) committed an act that deprived the

25  claimant of some right, privilege, or immunity protected by the Constitution or laws of the

26

United States."  *Redman v. County of San Diego*, 942 F.2d 1435, 1439 (9th Cir. 1991); *West v. Atkins*, 487 U.S. 42, 48 (1988).

The defendants argue that Tate failed to allege facts showing that either Silver or Ellerton, whom Tate has sued in their individual capacity, committed an act under color of law that violated his rights.  An individual may be liable under §1983 only if they, in some manner, are personally involved in the alleged violation.  *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  The defendants argue that Tate failed to allege that either Silver or Ellerton personally committed an act that deprived him of a right protected by the Constitution.

Regarding Ellerton, Tate responds that, in his complaint, he alleged that Ellerton is Chief of Staff for co-defendant Medical Staff.  Complaint, ¶14.  Tate further alleged, at ¶¶43-46, that he wrote a letter, dated December 16, 2008, to Ellerton.  He alleges that he objected to the re-credentialing action, referred Ellerton to the Credentialing Manual, expressed his belief that the three-month term was a limitation of his privileges, and requested a fair hearing.  In ¶47, Tate alleges that the "Defendants" (generally) did not respond to his letter.

Tate also alleges that, by letter dated August 21, 2009, he wrote a letter to Ellerton asserting that he had attempted to comply with the three conditions for re-credentialing, but that such conditions were impossible.  Complaint, ¶94.  In ¶95, Tate alleges that Ellerton did not respond.

In opposition, Tate relies upon the text of the Bylaws as establishing that the Chief of Staff is the chairman of the Medical Executive Committee, and that the MEC voted on three occasions to re-credential Tate for a three-month term.  The Court would also note that, as detailed previously, Credentialing Manual Article II.M.1 imposes upon the Chief of Staff a duty to immediately inform a physician by special notice of an adverse action such

as the limitation of privileges on an application for reappointment.  Broadly construed, Tate has sufficiently alleged that Ellerton failed to comply with a duty imposed by the Bylaws.

Regarding Silver, Tate responds that he alleged that Silver is the Chief Executive Officer of UMC.  Complaint, ¶13.  Relying upon the text of the Bylaws, which Tate references in his complaint, he further asserts in his opposition that the CEO of UMC is a member of the Medical Executive Committee.  Bylaws, Article IX.C.2.b (Composition of Medical Executive Committee).  Article IX.C.2.b actually provides that the CEO "or his/her designee" serves as an additional member of the MEC.  As noted by Defendants, however, the CEO or her designee serves on the MEC "as ex-officio without vote."  Tate further notes that he alleged that "Silver submitted a report of all credentialing activities taken by the MEC" at three meetings to the Trustees.  Tate fails to offer any argument, or point to any allegation of fact, suggesting that Silver's submission of reports to the Trustees of the credentialing activities of the MEC violated his due process rights.  Accordingly, dismissal of Tate's §1983 claims against Silver without prejudice is also appropriate for this reason.

Analysis - Breach of Contract

Tate fails to identify any allegation, and fails to make any argument, suggesting that Silver is a party to any contract with him.

Citing to ¶25 of his complaint and the signature pages of the Bylaws and Credentialing Manual, Tate asserts that Ellerton signed the Bylaws and other documents. The signature pages establish, however, that Ellerton signed the documents as Chief of Staff as a representative of the Medical Executive Committee, not as an individual.  While Tate argues that this indicates an enforceable contract between himself and Medical Staff, he fails to offer any argument that his allegation indicates an enforceable contract between himself and Ellerton.

Tate fails to offer any argument suggesting that he entered into a contract with UMC.

1      Accordingly, for these additional reasons, dismissal of Tate's breach of contract

2  claims against Silver, Ellerton and UMC, as well as his breach of the implied covenant of

3  good faith and fair dealing claims against Silver, Ellerton, and UMC, is warranted.

4      Tate has adequately alleged facts that the Medical Staff and the Trustees are

5  parties to a contract, consisting of the Bylaws (and Credentialing Manual and Fair Hearing

6  Plan, as documents implementing the Bylaws).

7      The Court cannot conclude, however, that Tate's present allegations are sufficient to

8  state claims for breach of contract and breach of the implied covenant of good faith and fair

9  dealing.  The Court has previously detailed the defect in these pleadings as to the

10 Trustees.  Tate couches his opposition in language that is even more general than the

11 language of his complaint.  For this additional reason, the Court will dismiss, without

12 prejudice, the breach of contract claims and breach of the implied covenant of good faith

13 and fair dealing.

14      <u>Analysis - Tortious Interference with the Bylaws Contract</u>

15      Tate acknowledges that a party to a contract cannot interfere with the contract.

16 Nevertheless, asserting that an <u>agent</u> of a party must be acting within the scope of

17 employment to escape liability, he argues that he has alleged that "Defendants' actions

18 were willful, wanton, reckless and malicious, and further show a complete and deliberate

19 indifference to, and conscious disregard for, the rights of the Plaintiff."  Opposition, at 18.

20 The argument fails for several reasons.  First, in support of his statement, he cites solely to

21 ¶330 of his complaint which states exactly the same.  Such allegation, however, is not an

22 allegation of fact.  Tate does not point to any allegation of fact that supports his conclusory

23 allegation in ¶330.  Second, Tate's argument (and the allegation of the complaint) is, again,

24 general as to all defendants.  Tate does not suggest how the defendants, as parties to the

25 contract, can be agents of themselves.  Similarly, Tate does not point to any allegation of

26

1  fact within the complaint suggesting that any defendant engaged in conduct as an agent of
2  a party to a contract, which conduct was outside the scope of employment.

3       Tate also argues that he can maintain both his breach of contract claim and tortious
4  interference claims against the defendants in the alternative.  The argument is irrelevant as
5  Tate's deficiency in pleading his tortious interference with the Bylaws contract does not
6  arise from an inconsistency with the breach of contract claims.  Rather, the critical defect in
7  pleading the tortious interference with the Bylaws contract is that Tate bases the claim
8  upon the same contract underlying his breach of contract claims against the defendants.
9  To sufficiently allege a tortious interference claim, Tate must sufficiently allege a valid and
10  existing contract.  If the alleged contract with the defendants is valid, he cannot maintain
11  his claim against the defendants for tortiously interfering with the contract because he has
12  alleged that they are parties to the contract.  If the alleged contract with the defendants is
13  not valid, Tate cannot maintain his claim against the defendants for tortiously interfering
14  with the contract because the contract is not valid.

15       For these additional reasons, dismissal of Tate's claim for tortious interference with
16  the Bylaws contract must be dismissed.

17       <u>Analysis - Tortious Interference with Tate's Relationship with the School of Medicine</u>

18       Tate's argument that his allegation that he had a "valid and existing relationship as
19  an instructor with the University of Nevada, School of Medicine" does not sufficiently allege
20  facts plausibly showing that he had entered into a valid and existing contract with the
21  University of Nevada, School of Medicine.  For this additional reason, the Court will dismiss
22  Tate's claim that the defendants tortiously interfered with his relationship with the University
23  of Nevada, School of Medicine.

24       <u>Analysis - Conspiracy</u>

25       Tate fails to point to any allegation of fact within his complaint suggesting the
26  formation and operation of a conspiracy.  He argues that he has alleged that the Medical

1    Executive Committee voted to recommend a three-month reappointment, that Silver

2    presented the recommendation to the Trustees, and that the Trustees approved the

3    recommendation.  Such allegations of conduct do not allege a plausible claim of

4    conspiracy.

5            Analysis - Negligence

6            The defendants argue that, as Tate has alleged they had a contract-based duty to

7    comply with the Bylaws, he cannot seek tort relief on these same duties.  The court

8    disagrees.  While Tate cannot recover on both a contract and tort theory, he can *plead*, in

9    the alternative, both a contract and a negligence claim.

10           The Court would reiterate, however, that dismissal of the claim is warranted because

11   of Tate's reliance upon generalized allegations against all defendants, rather than providing

12   each defendant fair notice of the alleged conduct of the defendant upon which Tate seeks

13   relief.

14           Analysis - Punitive Damages

15           The defendants seek dismissal of Tate's request for punitive damages on his state

16   law tort and contract claims.  As Tate's tort actions are brought against the defendants as

17   employees or officers of a political subdivision, Nev. Rev. Stat. §41.035 precludes an

18   award of punitive damages.  Tate's unsupported argument that a defendant acting willfully

19   and with malice is acting outside the scope of employment is without merit.

20           Further, Tate cannot obtain an award of punitive damages on his contract claims.

21   Accordingly, the Court will dismiss Tate's prayer for an award of punitive damages on his

22   state law claims.

23           Therefore, for good cause shown,

24           THE COURT **ORDERS** that Defendants' Motion to Dismiss (#11) is GRANTED as

25   follows:

26

1    Plaintiffs' prayer for punitive damages on his state law claims is DISMISSED with

2  prejudice;

3    Plaintiffs' Claims 2-21, 23, and 24 are DISMISSED without prejudice.

4

5  DATED this ___ day of September, 2010.

6

7  _____
   Lloyd D. George
8  United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

16