UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES S. TATE, JR., M.D., | |
|     Plaintiff, | Case No. 2:09-cv-01748-LDG (NJK) |
| v. | **ORDER** |
| UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, *et al.*, | |
|     Defendants. | |

    Presently before the Court are several matters. Previously, this Court stayed proceedings out of an abundance of caution as the plaintiff, James S. Tate, had filed a document with the Ninth Circuit in which the plaintiff sought reversal of a previous decision of this Court. The Ninth Circuit has subsequently denied the motion (#222). Accordingly, the Court will lift the stay, and deny Tate's motion to lift the stay (#219) as moot.

    Tate filed a letter (#210) asking that the Court recuse. He subsequently filed a motion pursuant to 28 U.S.C. §§ 144 and 455 asking that the Court recuse from this matter (#214). The defendants have filed a response (#216).

    Recusal is governed by 28 U.S.C. §§ 144 & 455. Pursuant to §144, upon the filing of a "sufficient affidavit that the judge before whom the matter is pending has a personal

bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." The affidavit in support of a motion for recusal must set forth facts supporting the belief that improper bias or prejudice exists.  Pursuant to §445(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  "Under both recusal statutes, the substantive standard is whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008) (internal quotations omitted).  A significant and often determinative factor in recusal jurisprudence is whether the source of bias is extrajudicial.  *Liteky v. United States*, 510 U.S. 540, 554-56 (1994).  No. 92-6921, 62 U.S.L.W. 4161, 4165 (March 8, 1994).  "Only after the legal sufficiency of the affidavit is determined does it become the duty of the judge to 'proceed no further' in the case."  *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1388 (9th Cir. 1989).  In making this determination, the court's inquiry is directed at the facial sufficiency of the affidavit, not the truth or falsity of the facts stated therein.  *Id.*

<u>Letter Requesting Recusal</u>

Counsel has previously been admonished that "[p]arties are not permitted to file letters."  In so doing, counsel's attention was drawn to Local Rules 10-1, and 10-2 explaining the formatting requirements for court filings.  As the context of that prior admonishment was a letter filed in response to a motion, counsel was also advised that pursuant to Local Rule 7-2(b), "the proper vehicle for opposing a motion is the filing of a response supported by a memorandum of points and authorities."

As counsel has now improperly attempted to use a letter as a motion for relief, the Court will further clarify for counsel that, pursuant to Local Rule 7-2(a), the proper vehicle for bringing a motion is to file a motion, not a letter, supported by a memorandum of points and authorities. Such motion must comply with the formatting requirements of Local Rules

10-1 and 10-2. Further, a motion brought pursuant to §144 must be accompanied by a legally sufficient affidavit. The letter submitted by counsel for Tate, even if construed as a motion unsupported by points and authorities, also fails as it was not supported by any affidavit, much less a legally sufficient affidavit. As with the prior letter submitted by counsel for Tate, the Court will strike the November 4, 2015, letter to the Court.

<u>Motion for Recusal</u>

Subsequent to filing a letter with the Court, Tate filed a supported motion for recusal to which he has attached an affidavit of his counsel. The affidavit, much of which is devoted to statements and assertions irrelevant to a motion brought pursuant to §§144 and 455(a), is not legally sufficient.

In Paragraphs 1 - 3, counsel states that he is admitted to practice in Nevada, and is one of counsel for the plaintiff.

In Paragraphs 4 - 5, counsel states that plaintiff sued the defendants in a prior case over which the Court presided, and states the Court "should have been familiar with this case for over seven (7) years."

Though the Court's inquiry into the legal sufficiency is generally limited to determining the facial sufficiency of an affidavit, and not the truth or falsity of the facts stated therein, the Court need not ignore the record. This case was not filed until September 2009. Thus, as accurately reflected by the record, the Court has presided over this case for just over six years, and over litigation filed by the plaintiff against the defendants for over seven years.

In Paragraphs 6 - 8, counsel recites that this matter was remanded from the Ninth Circuit in July, that on August 10 the Court set a trial date of November 16, and that on October 29, this Court held a status conference.

In Paragraph 9, counsel asserts that, at the status conference, the Court said "he had a bias that required him to transfer proceeding over the trial to another judge or

magistrate judge." Counsel generally cites, and thus incorporates, the entire transcript of the status conference.

The Court has reviewed the entire transcript of the status conference, and cannot locate any statement made during the status conference in which the Court stated it had a bias, or said that a bias required the Court to transfer this proceeding to another judge. Given that Tate's counsel had access to the transcript in preparing his affidavit, the Court construes Paragraph 9 as merely another example of the hyperbole for which Tate's counsel has demonstrated a penchant.[1]

In Paragraph 10, counsel asserts that "the Court, in response to the inquiry as to why the trial had to be moved with less than 3 weeks' notice, said 'Well, Bradley Ballard I helped raise.'" As established by the transcript, a more accurate summary of the exchange is that, at a status conference held three weeks prior to the date then calendared for trial, the Court informed the parties that he had spoken with a Magistrate Judge who had agreed that he could try the case commencing on January 19th. Tate's counsel responded by asking, "Is there a problem with you hearing the case?" The Court responded, "Well, Bradley Ballard I helped raise." The Court did not elaborate further.

The affidavit contains no further assertions relevant to whether the Court's relationship to Mr. Ballard requires recusal. In his memorandum, Tate relies on some

---

[1] The record is replete with examples in which counsel for Tate either employs hyperbole in characterizing prior events or discussions or simply cannot accurately remember what has occurred previously. He has, on many occasions, asserted that during the August 10 hearing following remand he asked the Court for a "firm trial date," and that the Court set a "firm" trial date for this matter to be tried on November 16. He repeated this assertion to the Magistrate Judge, asserting "we asked if we could have a firm trial date." The Magistrate Judge corrected Tate's counsel, noting that she had just listened to the August 10 hearing in which this Court set the trial date, and noting that Tate's counsel had not asked for a firm trial date. Tate's counsel then asserted, "I remember asking is this a stacked calendar or is that a firm date, and was told its not a stacked calendar, we're going." The Magistrate Judge again corrected Tate's counsel, noting that was not in the recording of the hearing. This Court has also reviewed the recording of the August 10 hearing. While Tate's counsel asked that the matter be tried promptly and not be delayed, he did not ask for (nor would the Court have granted) a "firm trial date."

4

additional facts that can be ascertained from the record, including that Mr. Ballard is listed as counsel for the defendants. Tate, however, also alleges facts in his memorandum that are neither in the record nor the affidavit of his counsel.

As to whether this Court's relationship with Mr. Ballard requires recusal, the Court will take notice only of those facts that are within the existing record, and will rely on the transcript of the status conference, rather than on the characterizations of those proceedings asserted by Tate's counsel in his affidavit. The Court has, from the outset of the filing of this case, been aware of Mr. Ballard's limited involvement in this litigation as counsel of record for defendants. The Court has also been aware that, while Mr. Ballard has been counsel of record, all pleadings and papers filed on behalf of defendants have been signed by additional counsel of record. The Court has also been aware, since the filing of the original complaint, that Tate alleged Mr. Ballard authored a letter sent to Tate. Until shortly before the status conference, and in light of Mr. Ballard's limited involvement in the case, the Court's relationship with Mr. Ballard did not provide any basis for the Court to recuse.

Shortly before the status conference, the defendants moved to disqualify Tate's counsel from further representing Tate and Tate moved to quash a trial subpoena served upon his counsel. These motions revealed a dispute between the parties regarding the extent to which both Tate's counsel and Mr. Ballard may have become involved as percipient witnesses, and the consequences of that involvement including potentially disqualification as counsel. In moving to disqualify Tate's counsel, the defendants argued, in part, that such is justified because, just as Mr. Ballard was a witness whom the plaintiff had subpoenaed, so also was Tate's counsel a witness whom the defendants had subpoenaed. In opposing the motion, Tate's counsel represented to the Court that "[t]he only reason why Mr. Ballard was subpoenaed was because Defendants refused to stipulate

to the authenticity and admission of various documents which Mr. Ballard authored in the course of this case."

Proceedings during the status conference demonstrated that Tate's representation regarding the limited involvement of Mr. Ballard was not accurate. During the status conference, Tate's counsel expanded the extent of the reasons he sought to call Ballard as a witness: "Mr. Ballard is – is merely a witness, who will primarily only be testifying about the authenticity of some documents *and a few, you know, tangential issues*." (Italics added.) Counsel for defendant suggested that, "if the only issues are authentication . . . we would certainly stipulate that any document he drafted, we would have no issues with that, your Honor." Although Tate had previously represented that the "only reason" Ballard was subpoenaed was that defendants would not stipulate to authenticity and admission of documents authored by Ballard, Tate's counsel did not accept the defendants' offered stipulation. Rather, Tate's counsel suggested to the Court that Ballard was "a witness in a jury trial. You're not judging his credibility. You'd only be ruling on objections."

Defendants again noted, "the representation [by Tate's counsel] was that Mr. Ballard is only an authentication witness. If that's true, he can withdraw that subpoena." Tate's counsel ultimately responded, not by accepting the stipulation that he had originally argued was the only reason Mr. Ballard had been subpoenaed, but instead by waiving any objection to the Court presiding over a trial at which Ballard testified. Thus, while only Tate's counsel fully knows the extent to which he will attempt to involve Mr. Ballard in the trial of this matter, and while the Court had disclosed the relationship to Mr. Ballard, counsel stated that he did not have a problem allowing Mr. Ballard to testify, "not withstanding the fact that his Honor knows Mr. Ballard." Thus, rather than accepting the twice-offered stipulation (which Tate had previously represented he had requested of defendants), Tate waived any objection to the Court continuing to preside over this matter regardless of the extent to which Mr. Ballard would be questioned as a witness.

6

The exchange at the status conference further confirmed what the Court had anticipated prior to the status conference, that the decision by the parties to subpoena counsel of record for the opposing party both altered the extent of Mr. Ballard's involvement in this case and revealed that change in status. The Court continued to preside over this matter, and continued its efforts to have this matter promptly tried, as Tate had waived his objection to this Court continuing to preside over this matter.

The Court finds that the affidavit of Tate's counsel is not, of itself, legally sufficient to require the Court to cease presiding over this matter on the basis of the Court's relationship with Mr. Ballard.

The remaining basis alleged in the affidavit by Tate's counsel–regarding the memory of the undersigned–is neither legally sufficient nor relevant in supporting a belief of bias or prejudice. Further, the statements of Tate's counsel regarding this matter are as inaccurate as his statements that, during the status conference, this Court said it had a bias.

The Court has not admitted to counsel for the plaintiff, or any other person, of recently being diagnosed with a memory condition. Nor could the Court make any such admission as no such diagnosis has ever been made. Similarly, the Court has not said to counsel (or any other person) that he is seeking medical treatment for a memory condition. Nor could the Court make any such statement as the Court does not require medical treatment for the non-existent memory condition.

In attempting to accommodate the parties' desire, and in particular the desire of plaintiff, to bring this matter promptly to trial, the Court engaged in a significant effort, including telephone discussions with the parties, to locate a judge to whom both parties would agree and who could hear this matter as promptly as possible. In response to the repeated insistence and inquiries of Tate's counsel as to why the Court would not hear this matter on the then-scheduled trial date, the Court disclosed to counsel for both parties an

apprehension to presiding over a lengthy trial that started on the scheduled date. As the Court indicated to the parties, that apprehension related to an illness from which the Court had recently recovered, and the potential impact on the Court's health at that time from the stress and fatigue typical of a lengthy trial. The Court further related that, during the illness, the Court had re-visited the doctor to have a prescription changed due, in part, to a concern whether the medication was affecting memory while being taken. Neither the condition of the Court's memory nor the undersigned's statements to counsel regarding his health provide any basis for recusal from this or any other matter.

Although the affidavit of Tate's counsel does not provide a legally sufficient basis for this Court to recuse, the Court will recuse from this matter. As the Court has previously indicated, the Court has a relationship with Mr. Ballard. Until shortly before the status conference, Mr. Ballard's involvement in this litigation was limited. Subsequently, however, the parties revealed disputes as to the extent to which counsel of record for both parties may have become percipient witnesses, and disputes as to the consequences of opposing counsel being percipient witnesses. Accordingly,

THE COURT **ORDERS** that the STAY in this matter (#217) is LIFTED;

THE COURT FURTHER **ORDERS** that the Clerk of the Court shall STRIKE the letter to the Court (#210);

THE COURT FURTHER **ORDERS** that plaintiff's motion to recuse (#214) is DENIED;

THE COURT FURTHER **ORDERS** that the Clerk of the Court shall transfer this matter to another district judge.

DATED this _1_ day of December, 2015.

Lloyd D. George
United States District Judge

8