UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| James S. Tate, Jr., M.D.,<br><br>        Plaintiff<br><br>v.<br><br>University Medical Center of Southern Nevada, et al.,<br><br>        Defendants | **2:09-cv-01748-JAD-NJK**<br><br>**Order Denying Motion to Strike, Motion to Reconsider, Motion to Amend, and Countermotion for Attorney's Fees.**<br><br>[ECF Nos. 220, 223, 224, 239] |

After the termination of his medical-staff membership and privileges at the University Medical Center of Southern Nevada (UMC), James S. Tate, Jr., MD., sued UMC and multiple other defendants under 42 USC §1983 and Nevada state law. This case was transferred to me after two rounds of dismissals, two rounds of summary judgment, and an appeal to the Ninth Circuit. Tate moves for reconsideration of both summary-judgment orders and for leave to file a third-amended complaint. Defendants oppose each of Tate's motions and move for attorney's fees under 28 USC § 1927.[1] Having reviewed the parties' filings and the extensive record in this case, I deny both parties' motions and give them until June 3, 2016, to file a joint pretrial order.

**Background**

Tate sues county hospital UMC; seven UMC Board of Trustee Members (the Trustees) in their official capacity; the Medical and Dental Staff of UMC, UMC's association of private physicians (the Association); Former Chief of the Association Dr. John Ellerton, M.D.; and current Chief of the Association Dr. Dale Carrison, M.D., for unlawfully terminating his Association membership and privileges.[2] Tate initially asserted 25 claims for relief.[3] After the first round of dismissals, Tate filed a streamlined amended complaint asserting four claims for relief: (1) due-

---

[1] ECF No. 239.

[2] *See generally* ECF No. 70.

[3] ECF No. 1.

process violations under § 1983, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) negligence per se.[4]

Defendants then moved to dismiss Tate's first-amended complaint.[5] The court granted in part and denied in part defendants' motion and granted Tate leave to file a second-amended complaint.[6] Tate timely filed a second-amended complaint, this time asserting three claims for relief: (1) due-process violations under § 1983, (2) breach of contract, and (3) breach of the implied covenant of good faith and fair dealing.[7]

Defendants next moved for summary judgment on all of Tate's claims,[8] and Tate moved for partial summary judgment on his § 1983 claim.[9] In March 2013, the court denied Tate's motion for partial summary judgment, granted defendants' motion for summary judgment,[10] and entered judgment for defendants and against Tate.[11] Tate appealed the court's earlier dismissal of his negligence claim and the summary-judgment order to the Ninth Circuit Court of Appeals.[12]

On July 15, 2015, the Ninth Circuit panel affirmed in part, reversed in part, and remanded the case to the district court for further proceedings.[13] The panel found that the district court correctly dismissed Tate's negligence claim but that summary judgment on Tate's remaining claims was

---

[4] ECF No. 46.

[5] ECF No. 50.

[6] ECF No. 67.

[7] ECF No. 70.

[8] ECF No. 86.

[9] ECF No. 87.

[10] ECF No. 103.

[11] ECF No. 105.

[12] *See* ECF No. 107.

[13] *See* ECF Nos. 114, 117.

1  improper.[14]

2  On remand, defendants moved for summary judgment on Tate's revived claims against UMC and the Trustees (the only remaining defendants), arguing that those defendants are immune from monetary damages.[15] The court granted in part and denied in part defendants' motion, leaving UMC as the only remaining defendant.[16]

On the heels of that summary-judgment order, Tate filed a motion for recusal of the district judge,[17] a motion to strike the summary-judgment order,[18] a motion to reconsider the court's first summary-judgment order,[19] and a motion for leave to amend.[20] The district judge voluntarily recused himself, and the case was reassigned to me.[21] Defendants oppose Tate's motions and request attorney's fees under 28 USC § 1927.

**Discussion**

**I.   Motion to Reconsider [ECF No. 223]**

Tate requests reconsideration of the portion of the court's original 2013 summary-judgment order granting judgment in favor of defendant Ellerton based on qualified immunity in light of the Ninth Circuit's mandate.[22] Notably, Tate did not challenge the court's determination that defendant Ellerton is entitled to qualified immunity on appeal, so the Ninth Circuit deemed that challenge

---

[14] *See* ECF No. 114.

[15] *See* ECF No. 140.

[16] ECF No. 212.

[17] ECF No. 214.

[18] ECF No. 220.

[19] ECF No. 223.

[20] ECF No. 224.

[21] ECF No. 226.

[22] ECF No. 223 at 3.

waived.[23] Tate argues that, although he did not explicitly raise this issue on appeal, the panel implicitly overruled the district court's finding that defendant Ellerton is entitled to qualified immunity because the panel found that the Association's bylaws created a protected privacy interest and found that whether Tate was deprived of that interest—or voluntarily resigned—was genuinely disputed.[24]

### A. Motions to reconsider under FRCP 60(b).

Because Tate's motion was filed more than 28 days after entry of the judgment, his motion is governed by FRCP 60(b). Rule 60(b) allows the district court to grant relief from a final judgment if "it is based on an earlier judgment that has been reversed or vacated,"[25] or for "any other reason that justifies relief."[26] A Rule 60(b) motion must be made "within a reasonable time." Motions to reconsider are left to the discretion of the district court.[27]

### B. Tate's belated motion to reconsider the first summary-judgment order is denied.

I decline to reconsider the court's 2013 entry of summary judgment for defendant Ellerton based on qualified immunity because I find that Tate's motion was not filed within a reasonable time. Tate waited more than four months after the Ninth Circuit mandate that purportedly forms the basis for his motion to move for reconsideration, and he did so only *after* the district court ruled on defendants' second summary-judgment motion and dismissed multiple other defendants. Tate states that he "realizes the late nature of [his] [m]otion" and he explains that he did not bring it sooner because "he was just trying to get to trial and did not want to do anything that would delay that goal."[28]

Tate made a strategic decision not to request reconsideration of defendant Ellerton's

---

[23] ECF No. 114 at 3.

[24] ECF No. 114 at 2.

[25] FED. R. CIV. P. 60(b)(5).

[26] FED. R. CIV. P. 60(b)(6).

[27] *Herbst v. Cook*, 260 F.3d 1039, 1044 (9th Cir. 2001).

[28] ECF No. 223 at 4.

dismissal, both after the summary-judgment order issued in 2013 and within a reasonable time after the Ninth Circuit's 2015 mandate, so that he could expedite trial. I decline to reconsider the court's order at this belated date simply because Tate's chosen strategy did not pan out the way that he anticipated.

Even if I were to consider Tate's motion on its merits, I would deny it. The Ninth Circuit mandate does not warrant reconsideration of defendant Ellerton's dismissal. Assuming that defendant Ellerton is not entitled to qualified immunity because Tate had a legitimate, clearly established property interest, defendant Ellerton is still entitled to summary judgment in his favor because Tate sued him in his official capacity as the former chief of the Association only. Official-capacity suits are treated as suits against the entity of which the officer is an agent, not against the official personally, because the real party in interest is the entity.[29] Tate's claims against defendant Ellerton as the former chief of the Association were therefore duplicative of Tate's claims against the Association itself, and subject to dismissal on that independent basis.[30]

## II.   Motion to Strike [ECF No. 220]

Tate also moves to strike the court's second summary-judgment order, issued after remand, that dismissed all claims against the Trustees and the Association, leaving UMC as the only remaining defendant. Tate argues that the order should be stricken because the presiding judge was biased and should have recused himself from the case.[31] Tate's motion is properly construed as a motion to alter or amend a judgment under Rule 59(e).

---

[29] *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

[30] I note that the court granted summary judgment in favor of the Association because it found that the Association is not a "person" for § 1983 purposes. Tate did not appeal that finding to the Ninth Circuit, and the Ninth Circuit deemed any challenge to it waived. ECF No. 114 at 3.

[31] Tate also claims that the district judge should have recused himself due to a medical condition. I decline to address this argument because the district judge expressly denied these allegations in his recusal order, ECF No. 225 at 7–8, and there is no support in the record for Tate's argument. Additionally, besides generally alleging the existence of the medical condition, Tate does not explain how that condition impaired the judge's decisions in this case.

**A.     Motions to Reconsider under Rule 59(e)**

Reconsideration under Rule 59(e) is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law.[32] "There may also be other, highly unusual, circumstances warranting reconsideration."[33]

**B.     The district judge's alleged bias**

To show bias, Tate focuses on a single statement made at the October 29, 2015, status conference. At that hearing, the presiding judge indicated that the trial would not proceed on November 16, 2015, as planned, and that if the parties were willing to stipulate to try the case in front of a magistrate judge, the new trial date would be January 19th.[34]

Tate's counsel asked why the presiding judge could not hear the case on November 16th as planned; the judge responded that he "helped raise" Bradley Ballard, counsel of record for defendant UMC.[35] Nevertheless, Tate's counsel urged the judge to keep the November 16th trial date, assuring him: "Mr. Ballard is—is merely a witness, who will primarily only be testifying about the authenticity of some documents and a few, you know, tangential issues," and that Tate was not concerned about the potential bias.[36] Defense counsel interjected that if the court's concern was a conflict relating to Ballard testifying as a witness at trial, the defendants would stipulate to the authenticity of the documents.[37]

Tate's counsel responded by again assuring the presiding judge that he was not concerned about the potential conflict: "Your Honor, I mean he's a witness in a jury trial. You're not judging

---

[32] *School Dist. No. 1J Multnomah Cty, Or. v. AcandS,Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

[33] *Id.*

[34] ECF No. 209 at 3, 14–18.

[35] *Id.* at 3:23–25.

[36] *Id.* at 4:1–6.

[37] *Id.* at 6:2–9.

his credibility. You'd only be ruling on objections,"[38] and Tate's counsel requested that the trial proceed as planned on November 16th. Defense counsel then offered again to stipulate to the authenticity of the documents so that Ballard would not need to testify, noting that "the representation was that Mr. Ballard is only an authentication witness. If that's true, [Tate] can withdraw that subpoena."[39]

Rather than accept defense counsel's twice-offered stipulation to authentication of the Ballard documents, Tate's counsel instead elected to waive any objection to the potential conflict: "[w]e—we would just like to keep the date and . . . we would waive any objection . . . now that you've made a disclosure that you know him. I don't think that we—we don't have a problem with that."[40] Defense counsel queried, "[t]o releasing him from the subpoena?;" Tate's counsel clarified: "[n]o; to allow him to testify, notwithstanding the fact that his Honor knows Mr. Ballard."[41] Based on these representations, the judge indicated that he would try the case on November 16th as scheduled if he could not find a magistrate judge willing to try it.

The next day, the presiding judge issued an order granting in part and denying in part defendants' motion for summary judgment,[42] and Tate quickly filed a motion for recusal.[43] In his voluntary recusal order, the judge stated that he did not believe that his relationship with Ballard required recusal. He first recounted that he had expressed concern about his relationship with Ballard at the status conference—and not before—because shortly before the status conference, the parties' filings revealed disputes about the extent to which counsel of record for both parties may

---

[38] *Id.* at 13–15.

[39] *Id.* at 7:10–12.

[40] *Id.* at 7:14–21.

[41] *Id.* at 7:22–25.

[42] ECF No. 212.

[43] ECF No. 214.

have become percipient witnesses.[44]

Second, the judge explained that the parties' representations at the status conference caused him to further question whether his relationship with Ballard required recusal. Tate's representation that Ballard's testimony would be limited to authenticating documents appeared to be incredulous given that Tate twice refused to accept the defendants' offer to stipulate to the authentication of the documents in lieu of calling Ballard as a witness.[45] The judge concluded that, although Tate's affidavit did not require his recusal, he would nonetheless recuse in light of the developments at the status conference.

### C.     I decline to reconsider the second summary-judgment order.

I do not find that the challenged order is manifestly unjust or that any other circumstances in this case warrant reconsideration. As soon as the parties' filings indicated that Ballard may become more involved in the case, the judge brought the potential conflict to the parties' attention at the status conference. Tate's counsel then repeatedly knowingly and intentionally waived any objection to the judge continuing to preside over the case despite the potential conflict.[46] In fact, Tate conveniently had no objection to the judge continuing to preside over his case until *after* the judge issued an unfavorable ruling; only then did Tate file the motion for recusal that forms the basis for his motion to strike. I decline to reconsider the summary-judgment order based on the judge's alleged bias both because (1) Tate has not demonstrated the judge's bias (2) Tate expressly waived any objection based on bias at the status conference.

Tate does not identify any other basis for reconsideration. Tate has not presented newly

---

[44] ECF No. 225 at 8. Tate subpoenaed Ballard to testify, ECF No. 129, and defendants then filed a motion to disqualify Tate's counsel as trial counsel, claiming that, like Ballard, he is a necessary witness and will also need to testify at trial. ECF No. 146.

The judge explained: "The Court has, from the outset of the filing of this case, been aware of Mr. Ballard's limited involvement in this litigation as counsel of record for defendants. The Court has also been aware that, while Mr. Ballard has been counsel of record, all pleadings and papers filed on behalf of defendants have been signed by additional counsel of record." ECF No. 225 at 5.

[45] ECF No. 225 at 6.

[46] ECF No. 209 at 7:17–25; 8:13–21.

discovered evidence or shown that the challenged order is clearly erroneous or subject to an intervening change in controlling law.  Nowhere in Tate's five-page motion does he explain what portions of the order he believes are wrong, let alone explain why he believes those findings and conclusions are incorrect.  He simply asserts that the entire order must be stricken based on the judge's alleged bias—an argument he expressly and repeatedly waived at the status conference.  Accordingly, Tate's motion to strike is also denied.

### III.   Motion to Amend [ECF No. 224]

Following the unfavorable summary-judgment ruling, Tate also filed a motion for leave to amend his complaint a third time.  Tate seeks to add personal-capacity claims against the individual defendants, including a claim for punitive damages, and a *Monell* claim against UMC.

#### A.   Standards for leave to amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that "[t]he court should freely give leave when justice so requires."  In deciding whether to grant leave to amend, courts consider the presence or absence of undue delay, bad faith, or dilatory motive on the part of the movant, any undue prejudice to the opposing party, and the futility of the amendment.[47]  When leave to amend is sought after the amendment deadline in the court's scheduling order has expired, the movant must also show good cause to reopen the amendment period and excusable neglect for the delay.[48]

#### B.   Tate has not shown good cause or excusable neglect.

The deadline to amend pleadings in this case was October 24, 2011, and discovery closed in 2012.[49]  Tate has not shown good cause to reopen the amendment period or excusable neglect for his four-year delay.  Tate argues that his proposed amendments stem "from the complicated nature of § 1983 litigation"[50] and explains that he did not seek leave to amend sooner because "all he wanted to

---

[47] *Forman v. Davis*, 371 U.S. 178, 182 (1962).

[48] FED. R. CIV. P. 6(b)(1)(B).

[49] ECF No. 69.

[50] ECF No. 224 at 4.

do was get a trial date."[51] But Tate offers no facts to show that he diligently pursued these amendments and compliance with the court's scheduling order. The facts supporting the proposed amendments are not newly discovered. In fact, Tate boldly asserts that, now that his case is stalled, there is no trial date, and the court has issued several adverse rulings, he "is no longer willing to overlook the full extent of his claims."[52] Tate also failed to previously assert these claims despite twice amending his original complaint.[53] On these facts, I cannot find that Tate has shown good cause or excusable neglect for his excessively tardy request.

Granting Tate's request would also unduly prejudice the defendants, several of whom have been completely dismissed from this case. Discovery has been closed for more than three years, and allowing Tate to add personal-capacity and *Monell* claims would likely require discovery to be reopened, further prolonging the life of this six-year-old case. Permitting Tate to file a third-amended complaint would also unfairly cause the defendants to incur the expense of litigating a third motion to dismiss and a third motion for summary judgment and would be a waste of judicial resources.

Because Tate has not shown good cause or excusable neglect, I decline to reopen the amendment period to permit Tate to file a third-amended complaint at this belated date. I also find that Tate's inexcusable delay and the resulting undue prejudice to defendants heavily favor denial of Tate's request. Accordingly, Tate's motion for leave to amend is denied.

**IV.  Countermotion for Attorney's Fees [ECF No. 239]**

In response to Tate's flurry of filings, defendants move for attorney's fees under 28 USC § 1927. Tate's counsel responds that he stands by his filings, that "virtually every order [that] has come from this Court in this case is riddled with factual inaccuracies," and that he "is being prevented from having due process."[54]

---

[51] *Id.* at 3.

[52] *Id.*

[53] ECF Nos. 1 (original complaint), 46 (first-amended complaint), 70 (second-amended complaint).

[54] ECF No. 243 at 3.

**A.  Standard for awarding attorney's fees under 28 U.S.C. § 1927**

Section 1927 provides that "[a]ny attorney or other person . . . who so multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay attorney's fees and other costs reasonably incurred as a result. "[T]h[is] section authorizes sanctions only for the multiplication of proceedings, it applies only to unnecessary filings and tactics once a lawsuit has begun."[55] Section 1927 sanctions "must be supported by a finding of subjective bad faith."[56] "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent."[57]

**B.  I decline to award attorney's fees under § 1927 at this juncture.**

Defendants argue that Tate's counsel has engaged in excessive, frivolous motion practice, including filing two fugitive letters[58] (which the court struck under the local rules), an emergency motion to strike their motion for summary judgment,[59] a motion for recusal,[60] and the instant motion to reconsider, motion to strike, and motion for leave to amend. At this time, defendants have not shown that Tate's counsel has multiplied the proceedings "unreasonably and vexatiously" and in bad faith. Though I am not persuaded by Tate's arguments, I cannot make a subjective finding of bad faith on the record before me.

---

[55] *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) (citations omitted).

[56] *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).

[57] *Estate of Blas Through Chargulaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1989) (citations omitted).

[58] ECF Nos. 122, 210.

[59] ECF No. 141.

[60] ECF No. 214.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Tate's **Motion to Strike [ECF No. 220], Motion to Reconsider [ECF No. 223], and Motion to Amend [ECF No. 224] are DENIED**.

IT IS FURTHER ORDERED that defendants' **Countermotion for Attorney Fees [ECF No. 239] is DENIED.**

IT IS FURTHER ORDERED that **the joint pretrial order is due June 3, 2016.** The parties are cautioned that they must comply with the local rule for joint pretrial orders. L.R. 16-3; 16-4.

Dated this 3rd day of May, 2016.

_____
Jennifer A. Dorsey
United States District Judge