UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Richard Tate, as Special Administrator for the Estate of James S. Tate, Jr., M.D., <br><br>     Plaintiff <br><br> v. <br><br> University Medical Center of Southern Nevada, <br><br>     Defendant | 2:09-cv-01748-JAD-NJK <br><br> **Order re Various Pretrial Motions** <br><br> [ECF Nos. 267, 284, 300, 301, 309, 310, 314] |

On November 30, 2016, I heard argument on the numerous motions[1] that the parties filed in advance of the jury trial that is set to start on December 6, 2016. Although I provided my findings of fact, conclusions of law, and orders on the bulk of these motions to the parties verbally, I reserved my ruling on a handful of items so I could further evaluate them. This order briefly summarizes some of the rulings I placed on the record, and it provides my rulings on the issues I reserved.

**Discussion**

**A.     Summary of the court's verbal rulings on the motions in limine.**[2]

  1.  **Plaintiff's Omnibus Motion in Limine** [ECF No. 267]. GRANTED in part. If plaintiff opens the door by eliciting testimony about Dr. Tate's reputation or anger-management issues, defendant may ask about the witness's knowledge of Dr. Tate's 2003 altercation in a **Radio Shack** store. Extrinsic evidence of the altercation (including the video), and the lawsuit or misdemeanor conviction resulting from it, will not be admitted because it is a side show, and the probative value of that extrinsic evidence is substantially outweighed by risk of unfair

---

[1] ECF Nos. 265, 267, 284, 300, 301, 302, 307, 314.

[2] My findings of fact and conclusions of law were stated on the record; this reiteration is intended only as a handy summary, not to supplant that record.

prejudice to the plaintiff.

2. **Defendant's Omnibus Motion in Limine** [ECF No. 284].

Request # 2. GRANTED in part. The **written opinions of Drs. Butts, Welsing, and Bland** are relevant only to the extent that they were provided to UMC during Dr. Tate's credentialing process. No **testimony** about these opinions is relevant or necessary unless these witnesses personally provided their written reports to UMC; if they did, they may testify, BUT then, their testimony is only relevant to describe what they provided to UMC, to whom at UMC, and when. If the plaintiff can lay the evidentiary foundation at trial that these written opinions were provided to UMC during the credentialing process, they may come in only with a limiting instruction that the jury may consider these opinions not for their truth or accuracy, but only to show what information was provided to UMC and when. The parties will be responsible for alerting the court before this evidence is sought to be admitted so that a limiting instruction may be timely provided.

Request # 3. GRANTED. Plaintiff will not be permitted to introduce evidence or argue that UMC has a **history of violence** or pervasive atmosphere of violence.

Request #5. GRANTED. Plaintiff will not be permitted to argue or elicit testimony that **UMC treated black doctors more harshly** than white doctors.

Request # 6. GRANTED in part, reserved in part for trial. **Dr. Gregory** will not be permitted to offer opinions about UMC's treatment of Dr. Tate or whether Dr. Tate received adequate process. Because it is unknown what else this witness will testify about at this time, I reserve any further ruling on his testimony topics for question-by-question rulings in response to timely defense objections at trial.

Request # 7. GRANTED. The U.S. Supreme Court's decision in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), makes it clear that punitive damages are not available against municipal defendants in 1983 cases: "We hold that a municipality is immune from punitive damages under [ ] § 1983."

Plaintiff may not seek or mention **punitive or exemplary damages** in this case because the claims are against a single defendant—UMC, a municipal entity.

<u>Request # 8</u>.  Plaintiff concedes that it cannot seek future lost wages for the late Dr. Tate because they are barred under Nevada's survival statute, NRS 41.100.

<u>Request # 9</u>.  GRANTED.  Any evidence or suggestion that **UMC was somehow responsible for Dr. Tate's death** is precluded.

<u>Request # 10</u>.  DENIED because I cannot at this time tell what the evidence of emotional distress damages will look like.  Accordingly, I will rely on defense counsel to make proper objections if improper testimony is sought to be elicited.

<u>Request # 11</u>.  GRANTED in part.  If plaintiff opens the door by eliciting testimony about Dr. Tate's reputation or anger-management issues, defendant may ask about the witness's knowledge of Dr. Tate's 2003 altercation in a **Radio Shack** store.  Extrinsic evidence of the altercation (including the video), and the lawsuit or misdemeanor conviction resulting from it, will not be admitted because it is a side show and the probative value of that extrinsic evidence is substantially outweighed by risk of unfair prejudice to the plaintiff.

<u>Request # 12</u>.  DENIED. Based on the plaintiff's response, it does not appear that counsel intends to **sensationalize Dr. Tate's death**.  Defense counsel must make proper objections if testimony is sought to be elicited, or if counsel offers improper argument.[3]

**B.    Issues taken under submission in defendant's omnibus motions in limine [ECF No. 284]**

I reserved my ruling on defendant's motion in limine #1 (seeking to preclude relitigation of resolved matters) and motion in limine # 4 (seeking to exclude evidence of other lawsuits

---

[3] While on the record, I also granted in part the plaintiff's motion to invoke the exclusionary rule (ECF No. 307), cautioning the parties that it is their job to alert the court if any witness enters the courtroom in violation of FRE 615.  And I granted the defendant's motion to exclude testimony from late-disclosed witness, Alicia Ashcraft, Esq.  ECF No. 300.

against the defendant).  Having had additional time to consider them, I now rule on these motions.

### 1.    Standards applicable to motions in limine

The Federal Rules of Evidence do not expressly authorize motions in limine, but district courts can rule on pretrial evidentiary motions under their "inherent authority to manage the course of trials."[4]  Pretrial consideration avoids the futile attempt to "unring the bell" when jurors see or hear inadmissible evidence, even when it is stricken from the record.[5]  It may also save time by minimizing side-bar conferences and other trial disruptions and by preventing the need to call some witnesses.[6]

These considerations are weighed against the court's ability to consider evidence in the context of trial, where the court is "better situated . . . to assess the value and utility of evidence."[7]  Limine rulings are provisional; they are "not binding on the trial judge [who] may always change [her] mind during the course of a trial."[8]  It is with an understanding of these principles that I considered the issues on which I ruled from the bench on November 30, 2016, and with which I address these remaining issues.

### 2.    Defense motion in limine #1: to preclude relitigation of previously decided issues: GRANTED in part, DENIED in part.

This case has a lengthy history both in this courthouse and the Ninth Circuit Court of

---

[4] *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984).

[5] *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (quoting *Kelly v. New W. Fed. Savs.*, 49 Cal. App. 4th 659 (Cal. Ct. App. 1996)).

[6] *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

[7] *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("A better practice is to deal with question of admissibility of evidence as they arise.").

[8] *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce*, 469 U.S. at 41–42 (noting that in-limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

Appeals. Dr. Tate's lawsuit against University Medical Center of Southern Nevada began in 2008 in 2:08-cv-01183-LDG-GWF, when he brought that suit to challenge his August 8, 2008, removal from UMC's Trauma Department call schedule. After the district court[9] dismissed his § 1983 claim that his removal from the trauma schedule was done in violation of his constitutional right to due process and denied him an injunction reinstating him to the trauma on-call schedule,[10] Tate appealed.  In a published opinion, the Ninth Circuit panel found that Dr. Tate's loss of clinical privileges mooted that appeal because "[i]f Dr. Tate [wa]s ineligible to practice medicine at UMC, then he [could not] be reinstated on the trauma on-call schedule at the hospital."[11]

*Tate I* was remanded, Judge George granted summary judgment on additional claims, and Dr. Tate again appealed.  Among the issues in the second appeal was the district court's dismissal of Dr. Tate's procedural due process claim on the legal conclusion that Tate's "constitutionally protected property interest lies in the clinical privilege, rather than an employment position that provides one avenue to exercise those privileges. . . ."[12]  The Ninth Circuit expressly:

- Rejected the notion that Tate's "removal from the on-call schedule was a *de facto* suspension of Tate's Constitutionally protected clinical privileges," noting that this argument was already rejected in the Ninth Circuit panel's earlier, published order and was, thus, the law of the case;[13] and

---

[9] The 2008 case, which the parties refer to as "*Tate I*"—and also this case until earlier this year—were handled by the Hon. Lloyd D. George.

[10] *See* 2:08-cv-01183-LDG-GWF at ECF No. 109, 138.

[11] *See* 2:08-cv-01183-LDG-GWF at ECF No. 134 at 4 (*Tate v. University Med. Ctr. of So. Nev.*, 606 F.3d 631 (9th Cir. 2010).

[12] *See* 2:08-cv-01183-LDG-GWF at ECF No. 109 at 7.

[13] *See* 2:08-cv-01183-LDG-GWF at ECF No. 147 at 2 (*Tate v. University Med. Ctr. of So. Nev.,* 490 F. App'x 18 (9th Cir. 2012)).

- Held that "Tate did not have a constitutionally protected property right in his continued employment as a trauma surgeon at UMC under Nevada law, and his due process claims based on the termination of his employment fail."[14]

Defendant moves in limine to preclude Tate from relitigating these issues.

These legal determinations by the Ninth Circuit are the law of this case. "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case."[15] The doctrine is "a judicial invention designed to aid in the efficient operation of court affairs,"[16] and it is discretionary; but it should be adhered to unless "the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust."[17]

*Tate I* arises from the same facts as the instant case, and that the two cases are inextricably intertwined is clear from the Ninth Circuit panel's published decision dismissing the first *Tate I* appeal as moot in light of UMC's termination of Tate's clinical privileges (which was being litigated here in *Tate II*). The plaintiff has not persuaded me that these Ninth Circuit rulings should not preclude him from presenting to the jury anew the question of whether Dr. Tate had a constitutionally protected interest in being employed as an on-call trauma surgeon at UMC. Accordingly, I exercise my discretion to follow the law of the case in this respect and hold that plaintiff's § 1983 procedural due process claim will be limited to Dr. Tate's clinical privileges; the plaintiff will not be permitted to argue that (1) Tate's removal from the on-call schedule was a *de facto* suspension of Tate's Constitutionally protected clinical privileges or (2) that Dr. Tate had a constitutionally protected property right in his continued employment as a trauma surgeon at UMC.

---

[14] *Id*. at 3–4.

[15] *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir., June 7, 2016).

[16] *Milgard Tempering, Inc. v. Selas Corp. of Amer.*, 902 F.2d 703, 715 (9th Cir. 1990).

[17] *Stacy*, 825 F.3d at 567.

The law-of-the-case doctrine similarly supports precluding the plaintiff from disputing Judge George's ruling in his September 10, 2010, order granting summary judgment against Dr. Tate on all claims against Peter Mansky, M.D., that Dr. Tate did not comply with the conditions UMC placed on his reappointment. As plaintiff's complaint explains, in November 2008, UMC advised Dr. Tate that three conditions were being placed on his clinical privileges; he was required to provide UMC with: (1) "A full mental and physical evaluation under the auspices of the Nevada Health Professionals Assistance Foundation," (2) "An evaluation for drug and alcohol dependant under the auspices of the Nevada Health Professionals Assistance Foundation," and (3) "evidence of enrollment in an anger management program under the auspices of the Nevada Health Professionals Assistance Foundation."[18] He alleges that he worked with the Nevada Health Professionals Assistance Foundation's director, Dr. Peter Mansky,[19] and Dr. Tate also sued Mansky for declaratory and injunctive relief arising from the termination of his clinical privileges, for conspiring with UMC and others to suspend his clinical privileges, for tortiously interfering with Tate's contractual relations, and for negligence.

Judge George granted summary judgment in favor of Mansky on all claims.[20] When disposing of Tate's tortious interference with contractual relations claim, Judge George found that the evidence established that:

- "Tate did not agree to voluntarily participate in the Foundation's program";
- "Mansky attempted to conduct an initial interview with Tate. Tate, however, did not even comply with the requirement of attending the interview by himself";
- "Tate declined to participate in the Foundation's program by which the Foundation would facilitate his evaluation"; and
- Tate "never participated in the Foundation's program" and "never received an evaluation

---

[18] ECF No. 70 at ¶ 61.

[19] *Id.* at ¶ 68–69.

[20] ECF No. 40.

facilitated by the Foundation which Mansky could disclose to UMC and Medical Staff."[21] Tate appealed.[22] The Ninth Circuit affirmed the entry of summary judgment on the claims against Mansky in its entirety.[23]

For the law-of-the-case doctrine "to apply, the issue in question must have been 'decided either expressly or by necessary implication in the previous disposition.'"[24] "Any issue not expressly or impliedly dealt with on appeal is open for the trial court's consideration on remand."[25] Judge George's grant of summary judgment on the tortious-interference claim against Mansky was expressly based on these findings that Dr. Tate did not comply with the conditions of reappointment. Those findings and conclusions were thus an implicit part of the Ninth Circuit's affirmance (via memorandum disposition) of that summary-judgment ruling. I find no basis to depart from the principle of finality on these issues. Accordingly, the plaintiff will not be permitted at trial to offer evidence challenging the specific findings that Dr. "Tate did not agree to voluntarily participate in the Foundation's program"; "Mansky attempted to conduct an initial interview with Tate. Tate, however, did not even comply with the requirement of attending the interview by himself"; "Tate declined to participate in the Foundation's program by which the Foundation would facilitate his evaluation"; and Dr. Tate "never participated in the Foundation's program" and "never received an evaluation facilitated by the Foundation which Mansky could disclose to UMC and Medical Staff."

However, I do not find that the law-of-the-case doctrine similarly pins the plaintiff to

---

[21] *Id*. at 13.

[22] ECF No. 107.

[23] ECF No. 114 at 4–5.

[24] *Milgard*, 902 F.2d at 715 (quoting *Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982)).

[25] *Rebel Oil Co. v. Atl. Richfield Co.*, 957 F. Supp. 1184, 1194–95 (D. Nev. 1997), *aff'd*, 146 F.3d 1088 (9th Cir. 1998) (citing *Beltran v. Myers,* 701 F.2d 91, 93 (9th Cir.), *cert. denied,* 462 U.S. 1134 (1983)).

Judge George's March 26, 2013, finding in his order granting summary judgment in favor of the defendants that "the *Bylaws and Credentialing Manual* do not create or define a protected interest in a two-year appointment," but rather, just "an expectation" that the "appointment will be for a period of two-years," and regardless, they "do not create a protected interest in clinical privileges that is greater than the protected interest in appointment to staff."[26] This order was appealed—successfully.[27] The same Ninth Circuit memorandum disposition that affirmed summary judgment on the claims against Dr. Mansky reversed Judge George's entry of summary judgment on the § 1983 claim and contract claims that are now heading to trial. I cannot affirmatively say that these findings about the scope and term of the privileges were not part and parcel of the ruling that was reversed. I cannot even say for sure that they were more than dicta[28] in Judge George's order because his order is rife with "even if Tate had a protected interest in appointment to staff for a period of two years" language. I thus exercise my discretion to decline to apply the law-of-the-case doctrine to preclude the plaintiff from presenting evidence about the scope and length of Tate's property interest in clinical privileges.

In sum, UMC's motion in limine #1 is GRANTED in part and DENIED in part.

### 3. Defense motion in limine #4: to preclude reference to the *Williams & Chudacoff* cases: GRANTED.

UMC or its employees were defendants in procedural-due-process cases in this district brought by other doctors: *Chudacoff v. UMC*[29] and *Williams v. UMC*.[30] The cases by both other

---

[26] ECF No. 103 at 17.

[27] ECF No. 114 at 2.

[28] The law of the case doctrine addresses legal issues decided by a court, not "observations, commentary, or mere dicta touching upon issues not formally before the Court." *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 533 (7th Cir. 1982), *cert. denied*, 459 U.S. 1226 (1983).

[29] 08cv863, 08cv0875, 08cv0981, and 09cv1679; *see also Chudacoff v. Univ. Med. Ctr of So. Nev.*, 649 F.3d 1143 (9th Cir. 2011).

[30] 09cv554.

9

doctors have been resolved. Plaintiff has indicated an intention to highlight these other cases to show a pattern and practice of due process violations and to show that UMC's responses to these other doctors prompted action (and letters to UMC) by Tate and contributed to Tate's emotional distress regarding his own proceedings. He also intends to use these cases "to demonstrate, in part, that Defendant in this case, specifically the Board of Trustees and the Medical Staff, knew the risks of failing to provide adequate due process."[31] "These physicians commiserated together. They suffered together. And through such commiseration and suffering, they realized that they were all being harmed by the wrongful actions of Defendant," plaintiff argues.[32]

Evidence of other procedural-due-process claims against UMC is inadmissible character evidence under Rule 404(b)(1), which prohibits the use of other-acts evidence "to show that on a particular occasion the person acted in accordance with the character." Here, evidence that UMC was found to have violated Doctors Williams and Chudacoff's procedural due process rights would lend the inference that the hospital similarly violated Dr. Tate's rights around that same time. Clearly, Rule 404(b)(1) precludes the use of evidence of the *Williams* and *Chudacoff* claims and events for that purpose.

Of course, there are exceptions to the rule. Rule 404(b)(2) states that other-act evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." But this evidence does not fit any of these exceptions. Although plaintiff argues that this evidence shows UMC's knowledge that the procedures it employed for Dr. Tate were constitutionally infirm, knowledge is not an element of a procedural-due-process claim under § 1983. The jury must weigh the *Mathews v. Eldridge* factors to determine if the process UMC afforded Dr. Tate was constitutionally sufficient, and knowledge of the risk is not among them.[33] Section 1983 does not, itself, have a

---

[31] ECF No. 306 at 19.

[32] *Id.* at 21.

[33] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) ("identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that

state-of-mind component; and although Dr. Tate must show that his deprivation was caused by more than "mere lack of care,"[34] the fact that other doctors were simultaneously challenging the constitutionality of their process is not probative of the fact that Tate's alleged deprivation was based on more than mere lack of care.[35]

Nor are these other claims relevant to show a pattern and practice by UMC necessary to impose liability against this defendant. There are multiple avenues for imposing municipal liability for the acts of employees or representatives: (1) the employees responsible for the deprivation were acting under an official policy or longstanding custom or practice, or (2) the injury was caused or ratified by an individual with "final policy-making authority."[36] The Ninth Circuit has already held that this is a ratification case: "The trustees received a recommendation from the MEC about Dr. Tate's membership and privileges and 'affirmatively approved' it."[37] No further municipal liability theory need be developed at trial.

And even if evidence of Doctors Williams and Chudahoff's claims were somehow relevant in this case, I would exclude this evidence under FRE 403 because its probative value is substantially outweighed by a danger of unfair prejudice to UMC: the jury ignoring the evidence about Dr. Tate's own history and process in favor of the more simple conclusion that UMC must not have afforded Dr. Tate due process, either. UMC, like the plaintiff, is entitled to have this case decided on the evidence of the events in this case, not based on the events or outcome of

---

will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.").

[34] *Daniels v. Williams*, 474 U.S. 327, 330, 334 (1986).

[35] Plaintiff also has not established that the process received by each doctor, or the individual circumstances of all doctors, were sufficiently similar.

[36] *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F3d 950, 964 (9th Cir. 2008).

[37] ECF No. 114 at 3, ¶ 3.

other doctors' cases.[38]  Accordingly, defendant's motion in limine #4 is GRANTED.  Evidence of the *Chudahoff* and *Williams* matters may not be introduced at trial.  **All counsel are responsible for instructing their witnesses of this evidentiary limitation before they take the stand**.

C.  **Requests for judicial notice of documents**

Both sides have asked the court to take judicial notice of various documents under FRE 201.  In large part, both sides misunderstand and thus overestimate the scope of FRE 201, which requires the court to take judicial notice of "adjudicative facts" when a threshold showing has been made.  Judicial notice of adjudicative facts must be approached cautiously because it dispenses "with traditional methods of proof" and removes the fact noticed from the province of the jury.[39]  The Ninth Circuit has held that taking judicial notice of findings of fact from another case exceeds the limits of Rule 201.[40]

A disputed fact does not become undisputed merely because a judge or other adjudicative body decides it.[41]  "If a court could take judicial notice of a fact simply because it was found to be true in a previous action, the doctrine of collateral estoppel would be superfluous."[42]  "As a

---

[38] To the extent that these cases have resulted in Ninth Circuit opinions, the law in those cases may be relevant precedent here.  The proper avenue for presenting that law to the jury, should it apply, however, is not during evidence presentation, but in jury instructions.

[39] *See* Fed. R. Evid. 201, advisory committee notes to subdivision (b).

[40] *Wyatt v. Terhune,* 315 F.3d 1108, 1114 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (citing *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it.")).

[41] *Urbanique Prod. v. City of Montgomery*, 428 F. Supp. 2d 1193, 1213 (M.D. Ala. 2006) noting that "It is well established that a court is precluded from taking judicial notice of the truth of a judicial finding of fact, simply because another judge has proclaimed the fact as so," and collecting cases).

[42] *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997); *accord*, *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it."[43] Thus, the court can use Rule 201 to "take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."[44] In effect, when presented with a document to be judicially noticed, the document is just supporting information for the "fact" sought to be noticed: that a particular event occurred. But the parties' requests for judicial notice go beyond this limited scope permitted by Rule 201.

### 1. Plaintiff's requests for judicial notice [ECF Nos. 309, 310]

Plaintiff's Renewed Request for Judicial Notice[45] seeks judicial notice of an excerpt from a 2013 Nevada Supreme Court order in which the Court summarized evidence in the record of a Board of Medical Examiners proceeding against Dr. Tate. These excerpts are factual findings, and the plaintiff seeks to use them "to supply, without formal introduction of evidence, facts essential to support" his claims. This is an inappropriate use of Rule 201. To grant this request would be to permit an end run around the collateral estoppel doctrine and allow Tate to use facts established in a proceeding to which UMC was not a party.

Plaintiff also asks the court to take judicial notice that the Board found that Tate's incident in the burn center at UMC on August 5, 2008, did not constitute a violation of the Medical Practice Act, NRS Chapter 630, and NAC Chapter 630.[46] But this finding was not handed down until September 5, 2014, long after it could have had any relevance in UMC's proceedings against Tate, so it has no relevance to Tate's claims here—except "to supply, without formal introduction of evidence, facts essential to support" his claims, and Rule 201 does

---

[43] *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983).

[44] *Jones*, 29 F.3d at 1553.

[45] ECF No. 309.

[46] *Id.* at 3.

1  not allow this.

2  Plaintiff next asks the court to take judicial notice of the legal conclusions of other judges
3  in this district that were made in the *Chudacoff* and *Williams* cases, and of the Ninth Circuit's
4  opinion in *Chudacoff*.[47] But Rule 201 authorizes judicial notice only of facts, not statements of
5  law, so this request falls outside the scope of what Rule 201 affords. The jury receives the law
6  from the judge via jury instructions. To the extent that the legal principles in these cases are
7  binding precedent—and are properly submitted in proposed jury instructions—they will be
8  incorporated into the trial that way.[48]

9  Next, the plaintiff asks for judicial notice of the Nevada Supreme Court's September 10,
10 2015, opinion in *Tate v. State of Nevada Board of Medical Examiners*, in which the Court held
11 that NRS 630.356, which grants physicians the right to judicial review of Board decisions while
12 simultaneously prohibiting district courts from entering a stay of the Board's decision pending
13 judicial review, violates the Nevada Constitution's separation of powers doctrine. He argues that
14 "this document demonstrates that Dr. Tate, while challenging the Nevada State Board of Medical
15 Examiner's decision regarding the incident involving his alleged alcohol use at Valley Hospital
16 in February, 2010, successfully fought on behalf of physicians in this State to have a statute
17 related to physician discipline struck as unconstitutional."[49] This notion that Tate seeks to use
18 this opinion to establish is not fact, it is editorialization. The request to use FRE 201 to establish

---

[47] *Id.* at 3–4. Plaintiff's request to take judicial notice of the jury verdict in *Williams* is denied because I have already ruled that evidence of the *Williams* lawsuit will be excluded.

[48] *See, e.g., Getty Petroleum Marketing, Inc. v. Capital Terminal Co.*, 391 F.3d 312 (1st Cir. 2004) (Lipez, J., concurring) ("Judicial notice of law is the name given to the commonsense doctrine that the rules of evidence governing admissibility and proof of documents generally do not make sense to apply to statutes or judicial opinions—which are technically documents—because they are presented to the court as law, not to the jury as evidence. . . . judicial notice of fact and judicial notice of law share the phrase 'judicial notice,' they draw on different rules of practice. Rule 201 'governs only judicial notice of adjudicative facts.' . . . . Judicial notice of law is outside the scope of Rule 201, and derives from practical considerations and case law that do not rely on Rule 201 or principles of evidence").

[49] ECF No. 309 at 5.

this notion is denied.

Finally, the plaintiff asks for judicial notice of a May 7, 2010, Order for Alcohol and Substance Dependency Evaluation and Assessment issued by the Investigative Committee of the Board of Medical Examiners. What fact plaintiff wants to establish from this order is not explained. Because the plaintiff has not identified what fact he wants judicially noticed, I deny this request without prejudice.

### 2.   Defendant's requests for judicial notice [ECF Nos. 301, 314]

The documents that the defendant wants the court to judicially notice under Rule 201 consist of medical records, a letter, and filings in court proceedings or Board of Medical Examiners proceedings. The medical records (defendant's exhibits 553 & 555 (sealed)) are unauthenticated, so I cannot conclude that they demonstrate undisputed facts. Even if I could, what facts they represent has not been established. That these documents were included in filings by Dr. Tate in his Board proceeding does not make them a proper subject of Rule 201. I decline the request to take judicial notice of Exhibits 553 and 555.

Exhibit 585 appears to be a letter from Valley Hospital to Doug Cooper at the Nevada State Board of Medical Examiners, but it is not authenticated. Defendant represents that the letter was included in the filings of various proceedings.[50] Because defendants have not demonstrated what adjudicative fact should be gleaned from this document or that the fact is not subject to reasonable dispute, I deny the request to take judicial notice of Exhibit 585.

Exhibits 560, 578, 600, and 601 are a complaint and findings of fact and conclusions of law in Board proceedings against Dr. Tate. Although Rule 201 would permit the court to take judicial notice of the fact and basic subject of these documents, their relevancy is not apparent for any purpose other than "to supply, without formal introduction of evidence, facts essential to support" UMC's defenses. Plus, the date of each of these documents falls after the dates of events in this case, leaving me unsure of their relevance. Accordingly, I deny the request to judicially notice these documents or any fact I might glean from them.

---

[50] ECF No. 314 at 2.

Defendant also argues that the Board's order at Exhibit 578 suspended Dr. Tate's license to practice medicine for six months, beginning March 7, 2014. But plaintiff has responded that the Board's suspension never took effect, and that order remains on appeal in the Eighth Judicial District Court. So it remains unclear whether the fact that Tate was suspended "can be accurately and readily determined" at this time.[51] This is an additional reason that the request for judicial notice of Exhibit 578 is denied.

Exhibit 598 is an Eighth Judicial District Court Judge's findings of fact and conclusions of law in a lawsuit against Dr. Tate brought by Kathleen Griffin. Rule 201 would permit the court to take judicial notice of the fact and subject matter of this document, but I have already ruled that extrinsic evidence of the Radio Shack incident will be excluded under FRE 403. So I deny the request to take judicial notice of this document for that reason.

Finally, Exhibit 599 is a 2008 complaint filed by Dr. Tate against Nancy Lee Shoeps and Michael Moore, suing these individuals for an August 5, 2008, incident in the Burn Care Unit of UMC. I could take judicial notice that Dr. Tate filed a lawsuit against these individuals, but it is unclear from defendant's motion what fact it wants to have judicially noticed with respect to this complaint. Accordingly, I deny the defendant's request to judicially notice this document or any facts from it without prejudice to the ability to re-raise this request during trial should UMC be able to articulate what fact it wants judicially established by this document.

In sum, all requests to take judicial notice of documents in this case are denied.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that:

- Defendant's Motion in Limine **[ECF No. 267] is GRANTED in part and DENIED in part** as stated in this order and on the record at the November 30, 2016, calendar call;

- Plaintiff's Motion in Limine **[ECF No. 284] is GRANTED in part and DENIED in part** as stated on the record at the November 30, 2016, calendar call

---

[51] Fed. R. Evid. 201(b)(2).

and summarized herein;

- The parties' requests for judicial notice of documents **[ECF Nos. 301, 309, 310, 314] are DENIED**;
- Defendant's motion to exclude testimony **[ECF No. 300] is GRANTED** as stated on the record at the November 30, 2016; and
- Plaintiff's request to invoke the exclusionary rule **[ECF No. 307] is GRANTED in part** as stated on the record at the November 30, 2016, calendar call.

DATED: December 2, 2016

_____
Jennifer A. Dorsey
United States District Judge